# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| KALEB KELCH, ) | |
|     *Plaintiff*, ) | |
| ) | Case No: 1:21-cv-237 |
| v. ) | |
| ) | Judges McDonough/Steger |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security ) | |
| Administration, ) | |
|     *Defendant*. ) | |

## REPORT AND RECOMMENDATION

**I.  Introduction**

This case is before the undersigned under 28 U.S.C. § 636(b), Rule 72(b) of the *Federal Rules of Civil Procedure*, and the Rules of this Court for a report and recommendation regarding the disposition of Plaintiff's Motion for Judgment on the Administrative Record [Doc. 16] and Defendant's Motion for Summary Judgment [Doc. 18]. Plaintiff Kaleb Kelch seeks judicial review under § 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), from his denial of disability insurance benefits by the Commissioner of the Social Security Administration ("Commissioner") under Titles II and XVI of the Act, 42 U.S.C. §§ 401-34, 1381-83f. *See* [Doc. 1].

For reasons that follow, the Court **RECOMMENDS** that: (1) Plaintiff's Motion for Judgment on the Administrative Record [Doc. 16] be **GRANTED IN PART**; (2) the Commissioner's Motion for Summary Judgment [Doc. 18] be **DENIED WITHOUT PREJUDICE TO REFILING** following remand; and (3) the decision of the Commissioner be **REMANDED** under sentence six of 42 U.S.C. § 405(g).

## II. Procedural History

On August 20, 2019, Plaintiff applied for disability insurance benefits and supplemental security income. (Tr. 16). Plaintiff's claims were denied initially as well as on reconsideration. *Id.* As a result, Plaintiff requested a hearing before an administrative law judge. *Id.*

At a telephonic hearing (due to the COVID-19 pandemic) on September 10, 2020, in which Plaintiff and his attorney both participated, Administrative Law Judge Katie H. Pierce ("the ALJ") heard testimony from Plaintiff and a vocational expert ("VE"). (Tr. 16, 26). The ALJ then rendered her decision, finding that Plaintiff was not under a "disability" as defined by the Act. (Tr. 25-26).

Following the ALJ's decision, Plaintiff requested that the Appeals Council review the denial, submitting new evidence for consideration; however, that request was denied. (Tr. 1-2). Exhausting his administrative remedies, Plaintiff then filed his Complaint [Doc. 1] on October 5, 2021, seeking judicial review of the Commissioner's final decision under § 405(g). The parties filed competing dispositive motions and this matter is ripe for adjudication.

## III. Findings by the ALJ

The ALJ made the following findings concerning Plaintiff's application for benefits:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2022.

2. The claimant has not engaged in substantial gainful activity since October 1, 2017, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq.*).

3. The claimant has the following severe impairments: schizophrenia spectrum disorder, anxiety disorder, borderline to low average intellectual functioning, and learning disability (20 C.F.R. §§ 404.1520(c), 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the non-exertional limitations as follows: the claimant is able to understand and carry out detailed but uninvolved written or oral instructions involving a few concrete variables in or from standardized situations; maintain concentration, persistence, and pace to perform these tasks with customary breaks; have occasional interaction with the general public and co-workers, but cannot provide direct customer service; adapt to occasional changes in the work setting or routine; set goals with assistance; make judgments on simple work-related matters; and perform goal-oriented work but no work at a production-pace such as an assembly line.

6. The claimant is capable of performing past relevant work as a kitchen helper, DOT# 318.687-010 (SVP-2, medium). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. §§ 404.1565, 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2017, through the date of this decision (20 C.F.R. §§ 404.1520(f), 416.920(f)).

(Tr. at 18-25).

## IV. Standard of Review

This case involves an application for disability insurance benefits ("DIB"). An individual qualifies for DIB if he: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

The determination of disability is an administrative decision. To establish a disability, a claimant must show that he is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The following five issues are addressed in

order: (1) if a claimant is engaging in substantial gainful activity, he is not disabled; (2) if a claimant does not have a severe impairment, he is not disabled; (3) if the claimant's impairment meets or equals a listed impairment, he is disabled; (4) if the claimant is capable of returning to work he has done in the past, he is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy, he is not disabled. *Id.* If, at one step, an ALJ makes a dispositive finding, the inquiry ends without proceeding to the next. 20 C.F.R. §§ 404.1520; 416.920; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that he cannot return to his former occupation, then the burden shifts to the Commissioner to show that there is work in the national economy that the claimant can perform considering his age, education, and work experience. *Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review is whether substantial evidence supports the Commissioner's findings and whether the Commissioner made any legal errors in the process of reaching the decision. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (adopting and defining substantial evidence standard in the context of Social Security cases); *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Even if there is contrary evidence, the Commissioner's findings must be affirmed if evidence exists to support the Commissioner's findings. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). Courts may not reweigh the evidence and substitute their judgment for that of the Commissioner "merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there

is a 'zone of choice' within which the [Commissioner] may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (internal quotation omitted); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986).

Courts may consider any evidence in the record, regardless of whether the ALJ cited to it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). But courts may not consider evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Courts are also not obligated to scour the record for errors not identified by the claimant. *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. August 18, 2009) (stating that assignments of error not made by claimant were waived). Further, issues "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

V.   **Analysis**

Among other things, Plaintiff claims that "[t]he new evidence submitted to the Appeals Council was not properly exhibited, considered, or addressed." [Doc. 17 at 2]. The Commissioner claims such new evidence "does not meet the required standard for remand." [Doc. 19 at 7]. The new evidence in question consists of three additional records Plaintiff submitted to the Appeals Council for consideration, *to wit*, a September 21, 2020 treatment note, an October 6, 2020 treatment note, and a September 24, 2020 medical source opinion. [Doc. 17-2]. Apparently, as a result of a technological glitch, the versions received by the Appeals Council were significantly altered—especially the September 24 medical source opinion—to the point of being partially indecipherable. (Tr. 69-84). Unfortunately, the net result was that the Appeals Counsel could not

conduct a meaningful review of these additional records. Plaintiff does not appear to have any culpability for the technological glitch.

The Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. 405(g), sentence six. It is undisputed that the additional evidence Plaintiff submitted to the Appeals Council is new. *See* [Doc. 19 at 7]. Therefore, the issues relevant to this Court's determination are whether the new evidence: (1) is material; and (2) is allowed for "good cause."

### A. Materiality

The Sixth Circuit has made clear that new evidence is "'material' only if there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)). In the present case, the Appeals Council found that the newly submitted evidence "does not show a reasonable probability that it would change the outcome of the decision." (Tr. 2). However, the Appeals Council only considered the September 21 treatment note in making this determination. *See id.* The Appeals Council eliminated the October 6 treatment note from consideration for "not relat[ing] to the period at issue." *Id.* It eliminated the September 24 medical source opinion from consideration for the same reason, claiming it was "undated." Both of these elimination decisions were error.

The ALJ issued her decision on September 25, 2020. (Tr. 26). Therefore, Plaintiff's new evidence must relate to the period on or before September 25, 2020. Plaintiff's September 21

treatment note was from a visit to Terry L. Howard, DO. Plaintiff's October 6 treatment note was also from a visit to Dr. Howard. Logically, the October 6 treatment note thus covered the period of September 22 through October 6. Four of the fifteen days covered by this treatment note fall on or before September 25. Therefore, while the partially relevant nature of the October 6 treatment note would be a relevant consideration in weighing the evidence, eliminating it entirely from consideration for "not relat[ing] to the period at issue" was error.

Plaintiff's September 24 medical source opinion clearly relates to the relevant period. The Appeals Council considered it to be undated because the version they received was so significantly altered that the date was no longer a part of the final page of the document. *See* (Tr. 84). However, instead of contacting Plaintiff's counsel to clear up the issue, the Appeals Council moved ahead with the documents that were obviously illegible in part. Plaintiff should not be penalized for an error that was no fault of his own, and the September 24 medical source opinion is clearly dated in its legible state. Therefore, the Appeals Council's decision that it did "not relate to the period at issue" was error.

Though the Appeals Council should have considered all three of Plaintiff's newly submitted documents, the independent question remains as to whether considering all three documents would make a different outcome reasonably probable. The September 21 and October 6 treatment notes provide relatively minimal support for a different outcome. However, the September 24 medical source opinion appears to provide strong support for Plaintiff's position. In the report, provider Samantha S. Walker, APRN, PMHNP-BC, opines that Plaintiff's functional limitations are "marked to extreme." [Doc. 17-1 at 3-5]. She found him "unable to respond appropriately to social stimuli," unable to "maintain focus/attention," and "unable to make calculated and thoughtful decisions." *Id.* at 5. She found Plaintiff "DOES NOT maintain hygiene."

*Id.* (emphasis in original). Further, she found him not to be a malingerer. *Id.* at 2.

The ALJ found that Plaintiff did not meet any of the criteria for impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("The Listings"), specifically the criteria for 12.03, 12.04, 12.06, and 12.11. (Tr. 19). One way to qualify for impairments in The Listings is through the "paragraph B" criteria.

> "Paragraph B of each listing (except 12.05) provides the functional criteria [the Commissioner] asses[es] . . . to evaluate how your mental disorder limits your functioning. . . . To satisfy the paragraph B criteria, [a claimant's] mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning."

20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00 Mental Disorders – Adult. Limitations in the four areas of mental functioning are classified as none, mild, moderate, marked, or extreme. *Id.* at 12.00F.

The ALJ found that Plaintiff had a "moderate limitation across the four main areas of work-related functioning." (Tr. 24). Psychiatric Nurse Practitioner Walker opined that Plaintiff had marked to extreme limitations in all four areas. [Doc. 17-1 at 3-5]. If this new information had been considered, it is reasonably probable that Plaintiff might have been found to have two marked limitations or one extreme limitation, thus qualifying Plaintiff for disability through the paragraph B criteria of The Listings. It is also possible that the Commissioner may not have elevated Plaintiff's impairments up to the level described. But considering how close Plaintiff was to the threshold without the inclusion of the September 24 medical source opinion, the Appeals Council's consideration of that opinion likely would have been sufficient to make a different outcome reasonably probable. For that reason, the Court finds that Plaintiff's new evidence is material.

### B. For "Good Cause"

Plaintiff must have good cause for failing to incorporate the new evidence into the record in a prior proceeding. Here, good cause exists.

First, it was an apparent technological glitch—through no fault of Plaintiff—that caused the Commissioner to erroneously discard the most relevant piece of new evidence at the reconsideration phase by the Appeals Council. So, Plaintiff has shown good cause for the Appeal's Council's failure to consider that evidence. However, the key inquiry here is whether Plaintiff had good cause for failing to incorporate the referenced new evidence into the record for consideration by the ALJ. *See Ferguson*, 628 F.3d at 276.

Good cause means "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* (quoting *Foster*, 279 F.3d at 357). The Court finds Plaintiff's argument regarding good cause to be persuasive. While Plaintiff's counsel indicated to the ALJ at the hearing that the record was complete, Plaintiff's reply brief states:

> [Plaintiff's counsel] sends out these kinds of forms to all disability clients as part of the representation process. Often those are sent directly to providers and to the clients themselves to take to their providers at their appointments. For various reasons, only a small portion of the time are we able to get medical providers willing or able to complete them.
>
> In this case, [Plaintiff's counsel] sent out these forms as part of the normal representation process, but we never received the completed form(s) or any indication that a completed form may be forthcoming. As such, [Plaintiff's counsel] assumed no provider would provide the requested medical opinions when discussing the completeness of the record with the ALJ during the hearing.

[Doc. 20 at 3].

The Commissioner argues that the seeking of medical records after the hearing is improper. *See* [Doc. 19 at 12]. This general principle is sound. However, the particular circumstances here reflect an appropriate exception to the general rule. Plaintiff was not directed to seek this

information by his counsel, he apparently did so on his own. [Doc. 20 at 3]. However, holding this course of action against Plaintiff would be an injustice in this case. "[T]he ALJ herself found that [Plaintiff] suffers from the severe mental impairments of schizophrenia spectrum disorder, depressive disorder, anxiety disorder, learning disability, and borderline to low average intellectual functioning." *Id.* at 4. The less than perfect procedure undertaken by Plaintiff is not reflective of some intentional plan to scheme the system, but rather reflective of a limited understanding due to the very conditions he claims render him disabled.

Thus, the limitations caused by Plaintiff's impairments provide a reasonable justification for the failure to acquire and present the new evidence for inclusion in the hearing before the ALJ under the specific circumstances. Plaintiff has therefore demonstrated good cause.

## VI. Conclusion

Having reviewed the administrative record and the parties' briefs, the Court **RECOMMENDS**[1] that:

1. Plaintiff's Motion for Judgment on the Administrative Record [Doc. 16] be **GRANTED IN PART**;

2. The Commissioner's Motion for Summary Judgment [Doc. 18] be **DENIED WITHOUT PREJUDICE TO REFILING** following remand; and

3. The decision of the Commissioner be **REMANDED** under sentence six of 42 U.S.C. § 405(g) for consideration of the referenced "new evidence."

**ENTER**.

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified constitutes a forfeiture of the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE